**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-11132

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

CAROLYN DENISE WADE,
TRACY D. WADE,
  a.k.a. Sealed Defendant 2,

*Defendants-Appellants.*

————————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:23-cr-60173-KMW-1

————————————————

Before WILLIAM PRYOR, Chief Judge, and LUCK and LAGOA, Circuit Judges.

PER CURIAM:

Carolyn and Tracy Wade appeal their convictions for wire fraud, making false statements to the Small Business Administration, and conspiracy. They challenge an evidentiary ruling, the refusal to give a jury instruction, and the sufficiency of the evidence supporting Carolyn's convictions. No reversible error occurred. We affirm.

## I. BACKGROUND

A grand jury indicted the Wades for conspiracy to commit wire fraud, 18 U.S.C. § 1349, wire fraud, *id.* § 1343, and conspiracy to make false statements to the Administration, *id.* § 371. The indictment also charged Carolyn separately with making false statements to the Administration, 15 U.S.C. § 645(a), and Tracy with wire fraud, 18 U.S.C. § 1343, and making false statements to the Administration, 15 U.S.C. § 645(a). The indictment alleged that the Wades conspired with Haydee Rivero to obtain fraudulent loans from the Paycheck Protection Program and to secure their later forgiveness by the Administration through the submission of fictitious tax forms and false payroll data.

Before trial, the parties contested the admissibility of Tracy's prior uncharged loan application and the propriety of the Wades' request for a good-faith jury instruction. The government notified the Wades that it intended to introduce the application under Federal Rule of Evidence 404(b) to prove intent and absence of mistake. The Wades argued that the uncharged application should be excluded as inadmissible character evidence, and they separately requested a good-faith jury instruction. The district court deferred

ruling on the admissibility of the evidence until the government offered it at trial and explained that the giving of any good-faith jury instruction would depend on whether the evidence at trial supported it.

At trial, the government presented testimony about the Paycheck Protection Program, which was intended to help small businesses pay their employees during the COVID-19 pandemic. The Administration oversaw the program but allowed private lenders to manage the loan application and disbursement process. Applicants submitted proof of eligibility and certified the veracity of their application under penalty of fine or imprisonment.

The government also presented evidence about the fraudulent nature of the Wades' applications. Tracy and Carolyn each applied for $20,833 loans as sole proprietors, reporting gross incomes of $112,430 and $113,560, respectively, based on 2019 Schedule C forms. They each sought forgiveness for the full amount of each loan and certified under penalty of perjury that they had used the loan proceeds exclusively on payroll. But Internal Revenue Service records proved that, although the Wades filed individual tax returns between 2018 and 2020, they never filed Schedule C returns for those sole proprietorships.

Rivero—who pleaded guilty to the conspiracy—testified that she and her husband were "good friends" with the Wades through their work in the funeral home industry. Tracy owned Wade Funeral Home, and Rivero's husband operated another funeral home where she worked as an administrative assistant.

Rivero explained that she prepared and uploaded fraudulent Schedule C forms for both Tracy and Carolyn. She testified that the purpose of the conspiracy was to obtain money from the government based on false information and that she worked with Tracy and Carolyn.

On cross-examination, the defense attacked Rivero's credibility by highlighting her cooperation agreement and by probing her interactions with Tracy. The defense sought to portray Tracy as an unwitting participant who provided his personal identifiers to the Riveros in good faith with no knowledge that they would submit fraudulent tax documents on his behalf. To rebut this theory, the government, on redirect of Rivero, introduced an email she received with the subject line "Wade Funeral Home." Rivero testified that the email contained an attachment that reported a "loan overview" for a loan estimated at $701,873. Although she stated that she did not work on that specific application, she printed the document and gave it to her husband. On recross, Rivero reiterated that she had received voided checks from both Tracy and Carolyn to facilitate the loan process, and that Carolyn paid her $1,000.

Digital evidence from Womply, a platform used to process applications for the Program, established that the Wades personally reviewed and approved the fraudulent filings. Womply's records linked the applications to the Wades' phone numbers, email addresses, and internet protocol addresses, and confirmed that Carolyn signed applications on May 18 and May 28, 2021, and that Tracy responded to one-time verification codes. Because the

Wades signed their documents through DocuSign, the entire application—including the misrepresented gross income—was visible to them during the signing process.

Additional evidence established the Wades' direct involvement through identity verification and device tracking. Using Persona, an identity verification service, the Wades authenticated their applications with government-issued identification and "selfie" photographs taken from their mobile devices. Digital forensics further linked the Wades to the fraud by tracing their activity to specific internet protocol addresses. Carolyn accessed the Womply portal from her home and employer networks, while Tracy used his smartphone and his business network at Wade Funeral Home to manage his accounts.

Bank records and related testimony detailed the use of the loan proceeds for personal expenses. Tracy and Carolyn each received $20,833 in personal accounts and issued checks for "reimbursement," "payroll," or "salary" to themselves and each other, despite never having made such payments previously. The Wades also used a portion of these funds to pay Rivero for her role in the scheme. After the government rested, the district court denied the Wades' motion for a judgment of acquittal.

The Wades introduced evidence that the Riveros—not the Wades—perpetrated the fraud and had a pattern of using false tax information without their clients' knowledge. Tracy testified that he relied in good faith on the Riveros and was "puzzled" by the fraudulent information. But on cross-examination, he admitted

that he performed activities in Carolyn's Womply account and that the evidence "undeniably" established that Carolyn had logged into her account several times. The government also questioned Tracy regarding a separate, uncharged loan application for Wade Funeral Home, which sought over $700,000 in funds for pandemic assistance. On redirect examination, Tracy reaffirmed that he never saw the fraudulent Schedule C forms during the signing process and maintained that he never agreed with the Riveros to defraud the government.

After they rested, the Wades renewed their motion for a judgment of acquittal on all counts. The district court again denied the motion.

Although a good-faith instruction was included in the proposed jury instructions, the district court stated that it did not believe that the instruction applied to the facts of the case and asked the Wades for supporting case law. When the Wades made no further argument, the district court removed the good-faith instruction from the final charge.

The district court instructed the jury on the elements of the offenses. As to the wire fraud counts, the district court explained that the government was required to prove the defendants acted with the "intent to defraud," which meant acting knowingly and with the specific intent to use false pretenses to cause loss or injury. The district court defined "knowingly" as an act done voluntarily and not because of a mistake or accident, and "willfully" as an act committed purposely with the "specific intent to do something the

law forbids." Afterward, the Wades stated that they had no additional requests for or objections to the instructions.

The jury found the Wades guilty on all counts. The Wades then moved for a judgment of acquittal. The district court denied the motion and ruled that the evidence, viewed in the light most favorable to the government, was sufficient to permit a rational jury to find the Wades guilty beyond a reasonable doubt on all charges. It determined that the electronic data and Tracy's own testimony established that the Wades knowingly and willingly participated in a scheme to obtain loans from the paycheck loan program based on fraudulent information with the intent to defraud. The district court sentenced Carolyn to three years of probation and Tracy to 90 days of imprisonment, followed by three years of supervised release.

## II. STANDARDS OF REVIEW

Two standards govern our review. "We review a denial of a motion for judgment of acquittal based on the sufficiency of the evidence *de novo*, but we view all evidence in the light most favorable to the government, resolving any conflicts in favor of the government's case." *United States v. Brown*, 125 F.4th 1043, 1052 (11th Cir. 2025) (citation and internal quotation marks omitted). "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Id.* (citation and internal quotation marks omitted). "We are bound by the jury's credibility

choices, and by its rejection of the inferences raised by the defendant." *United States v. Broughton*, 689 F.3d 1260, 1277 (11th Cir. 2012) (citation and internal quotation marks omitted). "We review evidentiary rulings for abuse of discretion." *Brown*, 125 F.4th at 1052.

The parties dispute which standard governs our review of the refusal to give a good-faith jury instruction. The Wades argue that we should review for abuse of discretion. The government argues that we should review for plain error. Because the result is the same under either standard, we review for abuse of discretion. *See United States v. Daniels*, 91 F.4th 1083, 1092 (11th Cir.), *cert. denied*, 144 S. Ct. 2592 (2024) ("We review a district court's refusal to give a requested jury instruction for an abuse of discretion.").

### III. DISCUSSION

We divide our discussion into three parts. First, we explain that any error in the admission of evidence regarding Tracy's uncharged loan application was harmless. Second, we explain that the district court did not abuse its discretion by declining to give a good-faith jury instruction. Third, we explain that sufficient evidence supported Carolyn's convictions for wire fraud, making false statements, and conspiracy to commit both offenses.

*A. Any Error in the Admission of Evidence Regarding Tracy's Uncharged Loan Application Was Harmless.*

The Wades argue that the district court erred by admitting evidence of an uncharged $700,000 loan application for Wade Funeral Home. They contend it was inadmissible character evidence

when introduced during Rivero's testimony on redirect and improper impeachment evidence during Tracy's cross-examination. The government responds that the evidence was admissible to rebut Tracy's claim of a mistake or, in the alternative, that any error was harmless. We agree that any error was harmless.

"Even if a district court abuses its discretion in an evidentiary ruling, if the error is harmless, we won't reverse on the basis of it." *United States v. Cremades*, 160 F.4th 1296, 1304 (11th Cir. 2025). The government bears the burden of proving harmless error. *Id.* "A nonconstitutional evidentiary error is harmless and must be disregarded unless it affected the defendant's substantial rights at trial." *Id.* (citations and internal quotation marks omitted); *see also United States v. Pon*, 963 F.3d 1207, 1227 (11th Cir. 2020) ("If [we] can say with fair assurance that the judgment was not substantially swayed by the nonconstitutional error, [we] must affirm even if the district court erred." (alteration adopted) (citation and internal quotation marks omitted)). "Overwhelming evidence of guilt may render an erroneous ruling harmless." *Cremades*, 160 F.4th at 1304. (citation and internal quotation marks omitted).

Any error in admitting evidence of Tracy's uncharged $700,000 loan application was harmless. The government's burden to prove harmlessness is met where overwhelming evidence of guilt exists. *See id.* The record contains extensive proof—including internet protocol addresses, correspondence, and identity verification data—linking Tracy to the fraud. The challenged testimony spanned only a few pages of a multi-day trial. The judgment was

not substantially swayed by that evidence. *See Pon*, 963 F.3d at 1227

### B. The District Court Did Not Abuse Its Discretion by Declining to Give a Good-Faith Jury Instruction.

The Wades argue that the district court committed reversible error by refusing to provide a good-faith jury instruction on the counts for conspiracy and wire fraud—offenses that required the government to prove that the Wades acted with an intent to defraud. Relying on *United States v. Goss*, 650 F.2d 1336, 1344 (5th Cir. Unit A 1981), they contend that, because there was at least some evidence to support the instruction, the district court was required to give it. They contend that the other instructions did not adequately cover their good-faith defense. The lack of a standalone instruction, they maintain, prevented the jury from considering whether they possessed the requisite mens rea to commit the offenses. We disagree.

A defendant is entitled to a jury instruction on a theory of defense that has "any foundation in the evidence." *United States v. Martinelli*, 454 F.3d 1300, 1315 (11th Cir. 2006). If "any evidentiary support" exists and the district court is "directed to the defense," it must charge the jury. *United States v. Goss*, 650 F.2d 1336, 1344 (5th Cir. Unit A. 1981). Yet a district court's refusal to do so is reversible error only when the instruction was "a correct statement of the law," "not substantially covered by other instructions," its refusal "seriously impaired the defendant's ability to defend himself," *Mar-*

*tinelli*, 454 F.3d at 1309 (citation and internal quotation marks omitted), and it "dealt with an issue properly before the jury," *United States v. Bell*, 112 F.4th 1318, 1336 (11th Cir. 2024). When we determine whether an instruction was "substantially covered by other instructions," we view the whole charge to ensure that it "fairly and correctly states the issues and the law." *Daniels*, 91 F.4th at 1093. A district court does not abuse its discretion by refusing a good-faith instruction if the other instructions correctly defined "knowingly" and "willfully." *See Martinelli*, 454 F.3d at 1315–16; *United States v. Hill*, 643 F.3d 807, 853–54 (11th Cir. 2011); *United States v. Jordan*, 582 F.3d 1239, 1248 (11th Cir. 2009).

The district court did not abuse its discretion by refusing the good-faith instruction because the charge as a whole "fairly and correctly" stated the law. *See Daniels*, 91 F.4th at 1093. Because the district court correctly defined "knowingly" and "willfully," the jury could not have convicted the Wades if it found that they acted in good faith. *See Martinelli*, 454 F.3d at 1316. The subject matter of the requested instruction was substantially covered by the definitions of the requisite mens rea. If the jury had concluded the Wades held an honestly formed belief, it could not have found that they acted with the "specific intent to do something the law forbids."

### C. Sufficient Evidence Supported Carolyn's Convictions.

The Wades argue that the district court erred in denying Carolyn's motion for a judgment of acquittal because there was insufficient evidence to prove that she knew of the falsified loan information. They contend that the record established that Tracy

submitted her information for a potential loan without evidence of Carolyn's personal knowledge or participation. We again disagree.

1. Sufficient Evidence Supports Carolyn's Convictions for Conspiracy to Commit Wire Fraud and to Defraud the Government.

To convict Carolyn of conspiracy to commit wire fraud, 18 U.S.C. § 1349, the government had to prove "(1) a conspiracy to commit [wire fraud]; (2) knowledge of the conspiracy; and (3) that [Carolyn] knowingly and voluntarily joined the conspiracy." *United States v. Feldman*, 931 F.3d 1245, 1257 (11th Cir. 2019) (citation and internal quotation marks omitted). To convict her of conspiracy to defraud the government, 18 U.S.C. § 371, it had to prove "(1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement." *United States v. Gonzalez*, 834 F.3d 1206, 1214 (11th Cir. 2016) (citation and internal quotation marks omitted). A defendant may be convicted even if she "played only a minor role in the overall scheme" or "did not have direct contact with other alleged co-conspirators." *United States v. Sosa*, 777 F.3d 1279, 1290 (11th Cir. 2015). Because an agreement may be proven "by inferences from the conduct of the alleged participants," it is sufficient for the government to establish "that the defendant knew the essential nature of the conspiracy." *United States v. Vernon*, 723 F.3d 1234, 1273 (11th Cir. 2013) (citations and internal quotation marks omitted).

Sufficient evidence supports Carolyn's conspiracy convictions. A jury could reasonably have found that Carolyn agreed with

Tracy and Rivero to submit fraudulent Schedule C documents to obtain a loan from the Paycheck Protection Program. The record reflects that Carolyn created a Womply account—reserved for sole proprietorships, which she did not possess—and verified her identity through the Persona program. Carolyn's repeated access to the Womply portal and her review of the loan applications through DocuSign established that she viewed the fraudulent materials before signing them, and her payment of $1,000 to Rivero proved her knowing participation in the scheme.

A jury could also reasonably have found that Carolyn conspired to defraud the government. Carolyn agreed with Rivero and Tracy to achieve an unlawful objective—obtaining loan forgiveness—and knowingly participated in the scheme. *See Gonzalez*, 834 F.3d at 1214. Carolyn received over $20,000 through fraudulent means and applied for forgiveness by falsely asserting that the funds were used for a permitted purpose. As evidenced by Tracy's testimony, Carolyn personally profited when the loans were forgiven based on this fraudulent information.

We reject Carolyn's argument that the evidence was insufficient because Tracy's testimony established that he was the catalyst of the scheme. The jury was free to—and did—discredit that testimony. *See Broughton*, 689 F.3d at 1277. A jury could convict Carolyn even if her participation was "slight" compared to that of her co-conspirators. *See Sosa*, 777 F.3d at 1290. That she did not communicate directly with Rivero is immaterial. *See id.* The evidence

proved that she understood the overarching goal of the conspiracy and acted to further it. *See id.*; *Vernon*, 723 F.3d at 1273.

### 2. Sufficient Evidence Supports Carolyn's Conviction for Wire Fraud.

To convict her of wire fraud, 18 U.S.C. § 1343, the government had to prove that Carolyn "(1) intentionally participate[d] in a scheme or artifice to defraud another of money or property, and (2) use[d] or cause[d] the use of the mails or wires for the purpose of executing the scheme or artifice." *United States v. Bradley*, 644 F.3d 1213, 1238 (11th Cir. 2011) (citations and internal quotation marks omitted). To support a finding of willfulness, the government must present evidence that the defendant intended to defraud by attempting to obtain something she was not entitled to through deceptive means. *United States v. Horn*, 129 F.4th 1273, 1287 (11th Cir. 2025). This intent may be established through circumstantial evidence. For example, "[e]vidence that a defendant personally profited from a fraud may provide circumstantial evidence of an intent to participate in that fraud." *Bradley*, 644 F.3d at 1239 (citation and internal quotation marks omitted).

Sufficient evidence supports Carolyn's convictions for wire fraud. To convict, the government had to prove that Carolyn intentionally participated in a scheme to defraud another of money and used wires to execute that scheme. *See id.* Because the parties stipulated to the use of interstate wires, the only issue is Carolyn's intent to defraud.

A jury could reasonably have found that Carolyn knowingly made material misrepresentations to obtain the loan. The record reflects that the Schedule C form used to obtain the loan was fraudulent. No "Carolyn Wade" sole proprietorship existed, and Rivero testified to fabricating the data. By affirming that this information was "true and correct," Carolyn made a material misrepresentation. *See id.* Carolyn also personally and actively participated in the scheme. Internet protocol address data established that she repeatedly accessed her Womply account. Carolyn's identity was further verified through the Persona program, which required her to upload photographs of her driver's license and "selfie" images from her mobile device. Forensic data confirmed that Carolyn used her phone to upload documents and viewed the fraudulent application on multiple occasions after it had been signed.

We reject Carolyn's arguments regarding her lack of intent. Although the Wades presented testimony that the DocuSign software did not display the full fraudulent form, the jury was free to—and did—discredit that testimony in favor of government witnesses who testified to the contrary. *See Broughton*, 689 F.3d at 1277. The jury was also entitled to reject Tracy's testimony that he was the sole actor, as internet protocol address data connected Carolyn—not Tracy—to the signing of the second loan. *See id.* Because Carolyn personally profited from the scheme, the jury had ample circumstantial evidence to find an intent to defraud. *See Bradley*, 644 F.3d at 1239; *Horn*, 129 F.4th at 1287.

3. Sufficient Evidence Supports Carolyn's Convictions for Making
False Statements.

Sufficient evidence supports Carolyn's convictions for making false statements to the Administration. It is unlawful to knowingly make a false statement to obtain a loan from the Administration. *See* 15 U.S.C. § 645(a). A jury could reasonably have found that Carolyn made false statements in both her loan and forgiveness applications.

Carolyn's May 18 and May 28 loan applications contained material misrepresentations. Although the underlying Schedule C forms were fraudulent, Carolyn affirmed—under penalty of perjury—that the information was true and correct. Her initials and signature on these documents, confirmed by Tracy's testimony and independent internet protocol address data, established her personal participation. To be sure, Tracy stated that he acted on Carolyn's behalf, but the jury was free to discredit this testimony. *See Broughton*, 689 F.3d at 1277.

Carolyn also made false statements to obtain loan forgiveness. To qualify for forgiveness, Carolyn was required to use the funds for specific, permitted purposes. The jury heard testimony that Carolyn wrote checks to herself to create the appearance of proper use, while instead using the proceeds to pay Rivero for the fraudulent Schedule C forms. Although Tracy maintained that the forgiveness process was "automatic," the government presented evidence that it required several affirmative steps. To secure forgiveness, the Wades submitted applications certifying under

penalty of perjury that they had used the proceeds for payroll. The jury was entitled to reject Tracy's testimony and find that Carolyn knowingly submitted fraudulent information to profit from the scheme. *See id.* Because a reasonable construction of the evidence supports the verdict, the district court correctly denied the motion for a judgment of acquittal. *See Brown*, 125 F.4th at 1052.

## IV. CONCLUSION

We **AFFIRM** the Wades' convictions.